[No. B131559. Second Dist., Div. One. Mar. 26, 2001.]

CITY OF VERNON, Petitioner, v.
PUBLIC UTILITIES COMMISSION, Respondent;
ATCHISON, TOPEKA & SANTA FE RAILWAY, Real Party in Interest.

**COUNSEL**

David B. Brearley, City Attorney, and Eduardo Olivo for Petitioner.

Peter Arth, Jr., Mary F. McKenzie, William N. Foley, Geoffrey B. Dryvynsyde and Dale Holzschuh for Respondent.

Gresham, Savage, Nolan & Tilden, John C. Nolan and Robin C. Cochran for Real Party in Interest.

**OPINION**

**MALLANO, J.**—Real party in interest Atchison, Topeka & Santa Fe Railway (Santa Fe) is a public utility that owns the Hobart Yard, an "intermodal" facility in which large shipping containers are transferred from railroad cars to trucks and vice versa. The facility is located partially within the city limits of petitioner City of Vernon (Vernon). Santa Fe has undertaken to expand

the size and capacity of the Hobart Yard, which will concomitantly increase the amount of truck traffic on adjacent streets. In proceedings before respondent California Public Utilities Commission (the Commission), Vernon asserted that the Hobart Yard expansion project required the preparation of an environmental impact report (EIR) within the meaning of the California Environmental Quality Act (CEQA). The Commission rejected Vernon's argument, ruling that an EIR was not required. We granted Vernon's petition for writ of review in order to give the matter plenary consideration. Having done so, we affirm the ruling of the Commission.

## BACKGROUND

The case has a lengthy history. In 1994, Santa Fe submitted applications to Vernon for conditional use permits in connection with the expansion project. Vernon refused to process the applications, asserting that Santa Fe needed to obtain a permit for the entire Hobart Yard, not just the additions it wished to make. In 1995, Santa Fe filed a complaint in superior court for declaratory relief, contending that Vernon's actions were illegal. In January 1996, Vernon filed a complaint with the Commission. Vernon's complaint alleged, among other things, that Santa Fe had failed to comply with applicable local regulations and that the expansion project violated CEQA in that an EIR had not been prepared. In February 1996, the superior court ruled in favor of Santa Fe. (*Atchison, Topeka & Santa Fe Railway v. City of Vernon* (Super. Ct. L.A. County, 1986, No. BC123510).) On November 6, 1996, the Commission issued its ruling on Vernon's complaint. (*City of Vernon v. Atchison, Topeka & Santa Fe Railroad* (Cal. P.U.C., Nov. 6, 1996) No. 96-11-015 [1996 WL 754746] (hereafter *Vernon v. Santa Fe I*).)

In *Vernon v. Santa Fe I*, the Commission held that, because the Hobart Yard expansion was a project of a public utility that did not require approval or other discretionary acts, the project was exempt from CEQA. However, with respect to the possibility of further environmental inquiry, the Commission observed that under the provisions of Public Utilities Code sections 762 and 762.5, "an aggrieved party 'may complain about utility conduct which may comply with all existing laws and regulations but nonetheless be unreasonable.' "[1] (*Vernon v. Santa Fe I, supra,* 1996 WL 754746 at p. *13, citing *H.B. Ranches, Inc. v. Southern California Edison Co.* (1983) 11 Cal. P.U.C.2d 400, 406.) The Commission further noted that in *H.B. Ranches* it had "also 'emphasized that such complainants, as the moving parties, bear

---

[1]Public Utilities Code section 762 provides, in part: "Whenever the commission, after a hearing, finds that additions, extensions, repairs, or improvements to, or changes in, the existing plant, equipment, apparatus, facilities, or other physical property of any public utility . . . *ought reasonably to be made,* . . . the commission shall make and serve an order

the burden of demonstrating the unreasonableness of a utility's conduct.' " (*Vernon v. Santa Fe I, supra,* 1996 WL 754746 at p. *13.)

The decision in *Vernon v. Santa Fe I* continued: "Vernon should be granted leave to amend its complaint, if it can, to allege with particularity facts to show why, in light of the economically feasible alternatives, if any, available to accomplish the same objectives, the means by which Santa Fe has chosen to implement its plan of expansion unnecessarily create avoidable adverse environmental effects of sufficient magnitude so as to make the expansion unreasonable. [Citation.] [¶] In assessing the adequacy of any amended complaint, we shall be guided by CEQA Section 21082.2.[2] Vernon may propound discovery upon Santa Fe . . . . Vernon, however, shall be solely responsible for conducting all environmental studies and analyses of such plans in connection with its complaint and may not lay off such studies and analyses on Santa Fe in the guise of discovery except to the extent that Santa Fe has already conducted any such studies or analyses and reduced them to written form. We include this stricture to emphasize the difference from environmental review under CEQA, in which the burden of demonstrating the reasonableness of a proposed action lies with the proponent of a project." (*Vernon v. Santa Fe I, supra,* 1996 WL 754746, at p. *13.)

In April 1997, the superior court judgment in Santa Fe's declaratory relief action was affirmed in a nonpublished opinion of Division Two of this court.

directing that such additions, extensions, repairs, improvements, or changes be made . . . ." (Italics added.)

Public Utilities Code section 762.5 provides, in part: "The commission, as a basis for making any order pursuant to the provisions of Section 762 relating to location of structures, shall give consideration to, and include in its order findings upon, the following factors: [¶] (a) Community values. [¶] (b) Recreational and park areas. [¶] (c) Historical and aesthetic values. [¶] (d) *Influence on environment* . . . ." (Italics added.)

[2] Public Resources Code section 21082.2 provides: "(a) The lead agency shall determine whether a project may have a significant effect on the environment based on substantial evidence in light of the whole record.

"(b) The existence of public controversy over the environmental effects of a project shall not require preparation of an environmental impact report if there is no substantial evidence in light of the whole record before the lead agency that the project may have a significant effect on the environment.

"(c) Argument, speculation, unsubstantiated opinion or narrative, evidence which is clearly inaccurate or erroneous, or evidence of social or economic impacts which do not contribute to, or are not caused by, physical impacts on the environment, is not substantial evidence. Substantial evidence shall include facts, reasonable assumptions predicated upon facts, and expert opinion supported by facts.

"(d) If there is substantial evidence, in light of the whole record before the lead agency, that a project may have a significant effect on the environment, an environmental impact report shall be prepared.

"(e) Statements in an environmental impact report and comments with respect to an environmental impact report shall not be deemed determinative of whether the project may have a significant effect on the environment."

(*Atchison, Topeka & Santa Fe Railway v. City of Vernon* (Apr. 16, 1997, B102025).) Also in April 1997, Vernon filed an amended complaint against Santa Fe with the Commission.

In April 1998, a hearing on Vernon's amended complaint was conducted before an administrative law judge. In its opening statement, Vernon asserted that it would prove three basic facts: (1) that expansion of the Hobart Yard would increase truck traffic on nearby roadways, (2) that the increase in traffic would cause unsafe reductions in the level of service at five surrounding intersections, and (3) that Santa Fe could substantially reduce the negative impacts by contributing 7 percent of the total projected cost of a $26 million intersection improvement project that had been planned for the area. Santa Fe responded that it needed to expand the Hobart Yard in order to facilitate commerce in the Los Angeles area and that Vernon could not meet its burden of demonstrating that adverse environmental effects of the expansion were of sufficient magnitude as to make it unreasonable. At the hearing, oral and documentary evidence from employees of the parties and independent experts was presented by both sides.

On December 3, 1998, the Commission rendered its decision. (*City of Vernon v. Atchison Topeka & Santa Fe Railroad* (Cal. P.U.C., Dec. 3, 1998) No. 98-12-021 (hereafter *Vernon v. Santa Fe II*).) In prefatory portions of *Vernon v. Santa Fe II*, the Commission posed the question presented as whether Santa Fe's "plans of expansion create[] adverse environmental effects so as to make expansion of the Hobart Yard unreasonable." The Commission also reiterated that it was being "guided by Public Resources Code section 21082.2."

The opinion continued with the Commission noting that all of Vernon's evidence had been directed to the environmental impact of increased traffic at five specific intersections. (*Vernon v. Santa Fe II, supra*, 98-12-021.) The Commission held that the "incremental traffic conditions [did not] constitute [an] adverse environmental impact which requires mitigation." Indeed, "[t]he evidence show[ed], and Vernon's witness conceded, that traffic conditions in the vicinity of Hobart Yard will be sufficiently bad and the level-of-service classification will be identical, irrespective of the Hobart Yard expansion." Thus, the Commission concluded, "the projected significant environmental effects are unavoidable. Vernon presented no evidence to show that Santa Fe could change the traffic effects of its expansion by selecting another location, by changing the arrangement of its site entrances or exits, or by adopting a plan of operations to shift traffic from peak hours to other hours. Vernon's only suggestion was that Santa Fe could mitigate

the traffic effects by contributing toward the funding of improvements to one of the five intersections. However, the evidence showed that those improvements would be constructed whether or not Santa Fe contributed to their cost or expanded Hobart Yard." (*Ibid.*) Accordingly, Vernon's complaint was dismissed.

Vernon applied for a rehearing. In *City of Vernon v. Atchinson, Topeka & Santa Fe Railroad* (Cal. P.U.C., Apr. 1, 1999) No. 99-04-032 [1999 WL 667587] (hereafter *Vernon v. Santa Fe III*), the Commission issued an "order granting limited rehearing to modify [*Vernon v. Santa Fe II*] and denying rehearing of modified decision." (*Vernon v. Santa Fe III, supra,* 1999 WL 667587 at p. *1, capitalization omitted.) The modifications included a new finding of fact that "[t]here are 'regional benefits' from increased intermodal freight rail transportation and regional truck traffic will be lessened with the Hobart Yard expansion." (*Id.* at p. *10.) Additionally, language was moved from a finding of fact to a conclusion of law and was revised to read: "Vernon has failed to prove that the traffic impacts arising from Santa Fe's expansion project are so significant that its project is unreasonable. Therefore, Santa Fe has not violated PU Code Sections 761,[3] 762 or 762.5." (*Ibid.*)

Following the decision in *Vernon v. Santa Fe III*, Vernon filed a petition for writ of review in this court pursuant to Public Utilities Code section 1756. On February 16, 2001, we directed the Commission to certify a copy of the record and set the matter for oral argument.[4] Oral argument was conducted on March 20, 2001.

## DISCUSSION

Under the version of Public Utilities Code section 1757.1 that was in effect at the time of *Vernon v. Santa Fe II* and *Vernon v. Santa Fe III*, our review is limited to a determination, based on the entire administrative record, of whether (1) the Commission acted without or in excess of its jurisdiction, (2) the Commission did not proceed in the manner required by

---

[3] Public Utilities Code section 761 grants the Commission authority to regulate by order following a finding of unjust, unreasonable, unsafe, improper, inadequate, or insufficient practices.

[4] In its answer filed in this court, Santa Fe argues that *Vernon v. Santa Fe II* was not an adjudicatory proceeding and that Vernon was therefore required to request relief directly from the Supreme Court. The Commission in its answer states that *Vernon v. Santa Fe II* was adjudicatory and Vernon's petition for writ of review was properly filed in the Court of Appeal. Given our conclusion that Vernon did not meet its burden under Public Utilities Code sections 762 and 762.5, we see nothing to be gained by addressing this controversy and proceed to consider Vernon's petition on its merits.

law, (3) the Commission's decision was not supported by the findings, (4) the findings in the decision were not supported by the evidence in light of the whole record, (5) the decision was procured by fraud or was an abuse of discretion, and (6) the decision violates the state or federal Constitutions. (Stats. 1998, ch. 886, § 14.)

■  In its petition to this court, Vernon alleges that the record does not contain substantial evidence to support the Commission's findings that expansion of the Hobart Yard will not cause a significant environmental impact. It further alleges that the Commission "clearly had an affirmative responsibility to conduct an environmental review which would give prime consideration to preventing environmental damage." Thus, claims Vernon, the Commission abused its discretion by failing to require Santa Fe to prepare an EIR or otherwise respond to the environmental impact of the Hobart Yard expansion and to undertake measures to mitigate that impact. We disagree.

Vernon had the burden of demonstrating to the Commission that changes to the Hobart Yard project "ought reasonably to be made" (Pub. Util. Code, § 762), giving consideration to the project's "influence on the environment" (*id.*, §§ 762.5). Although Vernon pays lip service to the existence of this burden, its entire argument is premised on the assumption that the evidence it presented required the Commission to conduct what for all intents and purposes is a full-blown CEQA review. Thus, for example, Vernon asserts in briefing to this court that "the environmental review required under Section 762.5 is essentially a CEQA review," that the Commission held that Public Resources Code section 21082.2 "must be followed," that the Commission failed "to follow its own decision to comply with Pub. Res[ources] Code §21082.2," and that the Commission "failed to comply with its own holding that Public Resources Code § 21082.2 was applicable to this case."

Vernon's position is unsupported. In *Vernon v. Santa Fe I*, the Commission merely offered to be "guided," not controlled, by CEQA and Public Resources Code section 21082.2 in making its determination of reasonableness under Public Utilities Code sections 762 and 762.5. (*Vernon v. Santa Fe I, supra,* 1996 WL 754746 at p. *13.) Similarly, in *H.B. Ranches, Inc. v. Southern California Edison Co., supra,* 11 Cal. P.U.C.2d at page 404, the Commission noted that its staff had stated that Public Utilities Code sections 762 and 762.5 review "is essentially equivalent to CEQA review." Nonetheless, the Commission did not adopt that position in the *H.B. Ranches* decision and has not on any occasion that has been brought to our attention deemed itself to be generally bound by the requirements of CEQA. (See also

*Marzolf v. Pacific Gas and Electric Co.* (1994) 53 Cal. P.U.C.2d 10 [at hearing under Pub. Util. Code, §§ 762, 762.5, Commission determined that CEQA did not apply].) In short, by no stretch of law or logic may the requirements of CEQA be engrafted onto a determination of reasonableness under Public Utilities Code sections 762 and 762.5.

That being said, Vernon's substantive contentions may be dealt with in short order. As noted in *Vernon v. Santa Fe I*, unlike review under CEQA where the burden of demonstrating the reasonableness of a project lies with its proponent, the burden here was on Vernon as the opponent of the Hobart Yard expansion to show that it was unreasonable. (*Vernon v. Santa Fe I, supra*, 1996 WL 754746 at p. *13.) No doubt, the evidence supports Vernon's assertion, with which the Commission agreed, that the project will cause an increase in traffic at the five surrounding intersections. But Santa Fe never disputed Vernon's assertion about an increase in traffic. Rather, the issue was whether "the means by which Santa Fe has chosen to implement its plan of expansion unnecessarily create avoidable adverse environmental effects of sufficient magnitude so as to make the expansion unreasonable. [Citation.]" (*Ibid.*; see also *H.B. Ranches, Inc. v. Southern California Edison Co., supra*, 11 Cal. P.U.C.2d at p. 406 [stating the issue as whether the project "will have a significant adverse impact on the environment and that there are economic alternatives to the [project] which would mitigate those adverse impacts"].)

We have reviewed the evidence on which the Commission based its decision. The record reveals that the parties differed on their projections of the extent by which the Hobart Yard expansion would increase traffic. Although these differences continue to be argued on appeal, we find nothing in the record that would compel us to conclude that Santa Fe's projections were not supported by substantial evidence. More important, Vernon offers nothing that would cause us to question the Commission's finding, apparently based on the concession of one of Vernon's witness, "that traffic conditions in the vicinity of Hobart Yard will be sufficiently bad and the level-of-service classification will be identical, irrespective of the Hobart Yard expansion." (*Vernon v. Santa Fe II, supra*, 98-12-021.) Nor has Vernon been able to identify any portion of the record that would undermine the Commission's findings that Vernon failed to meet its burden of proving that the traffic increase attributable to the Hobart Yard expansion project was reasonably avoidable or that the increase in traffic constituted an adverse environmental impact of such magnitude to make the expansion project unreasonable. Accordingly, Vernon's arguments must be rejected.

## Disposition

California Public Utilities Commission Decision No. 98-12-021, as modified in California Public Utilities Commission Decision No. 99-04-032, is affirmed.

Spencer, P. J., and Ortega, J., concurred.

On April 24, 2001, the opinion was modified to read as printed above.