[No. B186044. Second Dist., Div. One. Apr. 15, 2008.]

RAYMOND A. WOODS, Plaintiff and Appellant, v.
UNION PACIFIC RAILROAD COMPANY, Defendant and Respondent.

## COUNSEL

Girardi & Keese, John A. Girardi and V. Andre Sherman for Plaintiff and Appellant.

Michael Whitcomb and David M. Pickett for Defendant and Respondent.

## OPINION

## JACKSON, J.[*]—

### INTRODUCTION

Plaintiff Raymond A. Woods appeals from a judgment entered following the grant of a directed verdict in favor of defendant Union Pacific Railroad

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Company. We affirm the judgment. Plaintiff also appeals from the order awarding defendant ordinary costs and expert fees and costs. Inasmuch as plaintiff has presented no arguments with respect to this order, we deem plaintiff's appeal from the order to have been abandoned and affirm the order. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457].)

## FACTUAL AND PROCEDURAL BACKGROUND

In 1995, defendant hired plaintiff to work at its Long Beach Intermodal Container Transfer Facility (ICTF).[1] Plaintiff worked primarily as a ground-man. Ascending and descending railcars was one of plaintiff's regular duties, a duty for which he received training.

On the evening of November 7, 2001, plaintiff was at ICTF loading an outbound intermodal railcar identified as a Gunderson GWG-33, a high-profile 53-foot railcar with multiple bays. Attached to this railcar was a series of safety appliances that looked like and functioned as a ladder. From bottom to top, the appliances consisted of a sill step, two horizontal handholds, and two vertical handholds all of which were mounted to two vertical steel stiles that extended some distance above the top of the railcar.

While descending from this railcar, plaintiff sustained an injury. When plaintiff stepped onto the ground with his left foot, his right foot was on the bottom rung and his hands were on the bottom one-third of the vertical handholds. Plaintiff then turned his body to the right, intending to move to the next bay. When he initiated his turn to the right, he let go of the vertical handholds and brought his right foot down to the ground. At that time, he experienced a sharp pain in his left knee. At no time while descending the ladder did plaintiff slip or lose his grasp on the vertical handholds. The lower ends of these handholds were about two inches above plaintiff's head as he stood on the ground. The horizontal handholds (the rungs of the ladder) were available to grasp at lower positions.

---

[1] An intermodal facility is one in which shipping containers are transferred to and from railcars and trucks. (*City of Vernon v. Public Utilities Com.* (2001) 88 Cal.App.4th 672, 673 [106 Cal.Rptr.2d 145]; *Inter-Modal Rail Employees Assn. v. Burlington Northern & Santa Fe Ry. Co.* (1999) 73 Cal.App.4th 918, 921 [87 Cal.Rptr.2d 60].)

Despite his injury, plaintiff remained·in defendant's employ. Eventually, however, defendant discharged plaintiff, in that he was unable to perform his job and there were no light duty assignments he could perform. Plaintiff's injury necessitated surgery first to his left knee and later to his right knee.

On May 24, 2004, plaintiff filed this negligence action against defendant under the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 et seq.) and the Federal Safety Appliance Act (SAA) (49 U.S.C. § 20301 et seq.). The gravamen of plaintiff's action was that defendant "provided an unsafe workplace and engaged in unsafe and negligent practices contrary to its obligations under the FELA and/or provided unsafe railcars to its workers contrary to its obligations under the SAA, thereby directly or indirectly causing Plaintiff's injuries."

Trial in this matter commenced on May 25, 2005. Plaintiff's experts testified that the vertical handholds do not comply with the Code of Federal Regulations (CFR) as incorporated by the SAA and that plaintiff's injuries were caused by his exposure to unsafe working conditions, including the vertical handholds on the ladder, which compromised his leverage, balance and ability to control himself.

On June 2, 2005, after plaintiff rested his case, defense counsel informed the court that he wanted to make a motion for nonsuit. The court asked defense counsel to hold his motion until there was a break in the proceedings. Counsel agreed and then commenced the presentation of the defense case, calling several witnesses to testify. Among these witnesses was defendant's SAA expert, who testified, contrary to plaintiff's experts, that the vertical handholds under scrutiny in this case do not violate the CFR.

During a break in the proceedings, the court entertained defendant's motion for nonsuit, which was "based on the failure [of plaintiff] to provide evidence of a violation of the [SAA]." The court denied the motion in light of the experts' different interpretations of the SAA. The court further noted that even if it had not heard defendant's expert, it would have been inclined to deny the motion in light of plaintiff's expert's testimony that the CFR required horizontal handholds. Defendant then unsuccessfully moved for partial nonsuit on plaintiff's negligence claim.

On June 6, 2005, after defendant completed the presentation of its case, it filed a motion for a directed verdict. Plaintiff filed an opposition the same day. After listening to extensive arguments by counsel, the court reserved ruling on the motion, observing: "[W]hat it boils down to is is this a violation or is this an interpretation? If it is an interpretation, it is my purview. If it is a violation, it is the jury's purview. It is a very difficult decision."

On June 7, 2005, after wrestling with the issue, the trial court granted defendant's motion for a directed verdict. The court concluded that compliance with the SAA was a question of law, that plaintiff had failed to establish a violation of the SAA and that, apart from that, there had been no affirmative showing of negligence.

The court thereafter signed an order granting defendant's motion for a directed verdict and entered judgment in favor of defendant. This appeal followed.

## CONTENTIONS

Plaintiff contends that the trial court erred in granting defendant's motion for a directed verdict, in that substantial evidence supported plaintiff's claim that defendant's railcar was not in compliance with the SAA. For the reasons set forth below, we conclude that the trial court made the correct ruling when it granted defendant's motion for a directed verdict and entered judgment in defendant's favor.

## DISCUSSION

*Standard of Review*

A directed verdict in favor of a defendant will be reversed if "there is substantial evidence to support plaintiffs' claim, *and* if the state of the law also supports that claim." (*Margolin v. Shemaria* (2000) 85 Cal.App.4th 891, 895 [102 Cal.Rptr.2d 502]; see *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 629–630 [85 Cal.Rptr.2d 386].) On appeal, we review the trial court's ruling, not its reasoning. (*McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 802 [71 Cal.Rptr.3d 885].) If the trial court's ruling or decision is correct upon any theory of law applicable to the case, it will be upheld without regard to the considerations underlying the court's determination. (*Markowitz v. Fidelity Nat. Title Co.* (2006) 142 Cal.App.4th 508, 520 [48 Cal.Rptr.3d 217].)

*Statutory and Regulatory Framework*

■ "FELA is a broad remedial statute based on fault . . . and is intended by Congress to protect railroad employees by doing away with certain common law tort defenses." (*Villa v. Burlington Northern and Santa Fe* (8th Cir. 2005) 397 F.3d 1041, 1045.) FELA imposes upon a railroad a continuing and nondelegable duty to use reasonable care to provide railroad employees a safe place to work. (*Bailey v. Central Vermont Ry.* (1943) 319 U.S. 350, 352–353 [87 L.Ed. 1444, 63 S.Ct. 1062].) It "holds railroad employers liable for the injury or death of railroad employees that results, in whole or in part, from the railroad's negligence or that of its agents. [Citations.]" (*Frastaci v. Vapor Corp.* (2007) 158 Cal.App.4th 1389, 1395 [70 Cal.Rptr.3d 402].)

The SAA is "substantively if not in form [an] amendment[] to the [FELA]." (*Urie v. Thompson* (1949) 337 U.S. 163, 189 [93 L.Ed. 1282, 69 S.Ct. 1018]; accord, *Fontaine v. National R.R. Passenger Corp.* (1997) 54 Cal.App.4th 1519, 1525 [63 Cal.Rptr.2d 644].) The SAA also encompasses regulations enacted by the Federal Railroad Administration. (*McGinn v. Burlington Northern R. Co.* (7th Cir. 1996) 102 F.3d 295, 299.) These implementing regulations are set forth in part 231 of title 49 of the CFR.

■ The SAA imposes on a railroad an absolute duty to provide and maintain safety appliances on its trains. (*O'Donnell v. Elgin, J. & E. R. Co.* (1949) 338 U.S. 384, 390–391 [94 L.Ed. 187, 70 S.Ct. 200].) The act "has been liberally construed so as to give a right of recovery for every injury the proximate cause of which was a failure to comply with a requirement of the [a]ct." (*Swinson v. Chicago, St. P., M. & O. Ry.* (1935) 294 U.S. 529, 531 [79 L.Ed. 1041, 55 S.Ct. 517].) When a violation of the SAA results in injury to an employee, the railroad is strictly liable for the injury. (*Carrillo v. ACF Industries, Inc.* (1999) 20 Cal.4th 1158, 1170, fn. 4 [86 Cal.Rptr.2d 832, 980 P.2d 386]; *McGinn v. Burlington Northern R. Co., supra,* 102 F.3d at p. 299.) The SAA thus dispenses "with the necessity of proving that violations of the safety statutes constitute negligence; and making proof of such violations is effective to show negligence as a matter of law." (*Urie v. Thompson, supra,* 337 U.S. at p. 189.)

■ The SAA does not create an independent cause of action. (*Crane v. Cedar Rapids & I. C. R. Co.* (1969) 395 U.S. 164, 166 [23 L.Ed.2d 176, 89 S.Ct. 1706].) It is the FELA that "makes railroads liable for a violation of the SAA." (*Norfolk & Western R. Co. v. Hiles* (1996) 516 U.S. 400, 408, fn. 11 [134 L.Ed.2d 34, 116 S.Ct. 890].) In other words, FELA is the vehicle for seeking redress for a violation of the SAA. (*Crane, supra,* at p. 166.)

■ A FELA action may be brought in state or federal court. (*Lund v. San Joaquin Valley Railroad* (2003) 31 Cal.4th 1, 5 [1 Cal.Rptr.3d 412, 71 P.3d 770]; *Miller v. Union Pacific Railroad Co.* (2007) 147 Cal.App.4th 451, 455 [53 Cal.Rptr.3d 893].) When a FELA action is instituted in state court, state law governs the resolution of procedural issues unless application of state law results in the denial of a right granted by Congress. Federal law governs the resolution of substantive issues. (*Lund, supra,* at pp. 6–7; *Miller, supra,* at p. 455.)

*Directed Verdict Was Proper*

■ Whether a particular railroad appliance comes within the purview of the SAA is a question of law. (*Carrillo v. ACF Industries, Inc., supra,* 20 Cal.4th at p. 1164.) Here the parties agree, as do we, that the appliance in this case-handholds-is governed by the SAA and its regulations.[2]

Plaintiff asserts that although the SAA and CFR call for vertical handholds in certain situations not applicable here, their existence and location on the railcar in this case constituted "a very dangerous operation." In plaintiff's view, the vertical handholds adjacent to the ladder are not required by and do not comport with the applicable law, which instead requires horizontal handholds that an employee can grab onto when going up and down the ladder. Plaintiff maintains that his experts' testimony supports his view and thus constitutes substantial evidence precluding the grant of defendant's motion for directed verdict. We disagree.

■ While the question of whether a particular safety appliance *complies* with the SAA generally is a question of fact to be decided by the trier of fact (*Carter v. Atlanta & St. A. B. R. Co.* (1949) 338 U.S. 430, 435 [94 L.Ed. 236, 70 S.Ct. 226]; *Myers v. Reading Co.* (1947) 331 U.S. 477, 483 [91 L.Ed. 1615, 67 S.Ct. 1334]; *Swinson v. Chicago, St. P., M. & O. Ry., supra,* 294 U.S. at pp. 531–532 [79 L.Ed. 1041, 55 S.Ct. 517]), compliance is a nonissue if the law does not support the plaintiff's claim in the first instance. (*Margolin v. Shemaria, supra,* 85 Cal.App.4th at p. 895; *Howard v. Owens Corning, supra,* 72 Cal.App.4th at pp. 629–630.)

---

[2] Under the SAA, "a railroad carrier may use or allow to be used on any of its railroad lines—[¶] (1) a vehicle only if it is equipped with—[¶] . . . [¶] (C) secure ladders and running boards when required by the Secretary of Transportation, and, if ladders are required, secure handholds or grab irons on its roof at the top of each ladder; [¶] (2) except as otherwise ordered by the Secretary, a vehicle only if it is equipped with secure grab irons or handholds on its ends and sides for greater security to individuals in coupling and uncoupling vehicles." (49 U.S.C. § 20302.)

The interpretation of statutes and administrative regulations is a question of law whose ultimate resolution rests with the courts and thus is subject to de novo appellate review. (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 191 [62 Cal.Rptr.3d 722]; *Overaa Construction v. California Occupational Safety & Health Appeals Bd.* (2007) 147 Cal.App.4th 235, 244 [54 Cal.Rptr.3d 154].) Opinions offered by the parties' experts are not binding.

Nowhere in the SAA's implementing regulations is reference made to the specific type of railcar involved in this case. Accordingly, our resolution of plaintiff's SAA claim is governed by section 231.18 of title 49 of the CFR entitled, "Cars of special construction." It provides that "[c]ars of construction not covered specifically in the foregoing sections in this part, relative to handholds, sill steps, ladders, hand brakes and running boards may be considered as of special construction, but shall have, as nearly as possible, the same complement of handholds, sill steps, ladders, hand brakes, and running boards as are required for cars of the nearest approximate type." (49 C.F.R. § 231.18 (2007); see *Beissel v. Pittsburgh and Lake Erie R. Co.* (3d Cir. 1986) 801 F.2d 143, 146–147.)

Citing exclusively to regulations that discuss horizontal handholds (see 49 C.F.R. §§ 231.1(h)(3)(i), 231.2(e), 231.6(c), 231.7 (2007)), and ignoring numerous others that discuss vertical handholds (see 49 C.F.R. §§ 231.1(j), 231.2(g), 231.8(e)(3)(ii), 231.9(e)(3)(iv), 231.11(k)(3)(ii), 231.11(m), 231.12(b)(3), 231.14(c)(3), 231.24(h) (2007)), plaintiff maintains that horizontal handholds are required on the subject railcar. Accepting this as true for purposes of argument, it is undisputed that the railcar's ladder contains two horizontal handholds, namely, its rungs.

Although the two handholds at the top of the appliance are positioned vertically, plaintiff does not direct our attention to, and our review of the SAA's implementing regulations has failed to uncover, one or more provisions that can be construed as *prohibiting* the particular combination of vertical and horizontal handholds on the railcar under scrutiny here. Inasmuch as the appliances required by the SAA's implementing regulations only "represent the minimum of safety equipment," there is nothing prohibiting the installation of additional safety appliances. (*Shields v. Atlantic Coast Line R. Co.* (1956) 350 U.S. 318, 324 [100 L.Ed. 364, 76 S.Ct. 386].) That the Federal Railroad Administration took no exception to the safety appliance arrangement challenged in this case during the design review process is significant.

In light of our conclusion, as a matter of law, that the SAA and its regulations do not prohibit the use of vertical handholds on the railcar in combination with horizontal handholds, FELA liability cannot be premised on a violation of the SAA. Inasmuch as plaintiff, in his appellate briefs, has failed to direct our attention to substantial evidence in the record supporting a basis, independent of the SAA, for his negligence claim, we conclude that directed verdict for defendant was proper.[3]

The judgment and order are affirmed.

Vogel, Acting P. J., and Rothschild, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 30, 2008, S164251. George, C. J., did not participate therein.

---

[3] In light of our conclusion, we need not address defendant's assertion that it was also entitled to a directed verdict because plaintiff failed to establish causation and that the railcar was "in use" for purposes of the SAA.