Filed 7/6/15  Marriage of Straw CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

| | |
|---|---|
| In re the Marriage of JASON ADAM and DARCI ALICE STRAW. | C072933 |
| JASON ADAM STRAW,<br><br>Appellant,<br><br>v.<br><br>DARCI ALICE STRAW,<br><br>Respondent. | (Super. Ct. No. PFL 20100840) |

Jason Adam Straw (husband) appeals from an order requiring him to pay $40,000 in pendente lite attorney fees and costs "forthwith" to Darci Alice Straw (wife).  (Fam. Code, § 2030.)[1]  Husband's primary contention on appeal is that the trial court abused its discretion in ordering him to pay the fees because "[a]fter deducting [his] court ordered support obligations [($23,500)] from his monthly income, it was undisputed that there were *zero* dollars remaining to pay anything to [wife]."  In the alternative, he asserts that

_____

[1]  Further undesignated statutory references are to the Family Code.

1

"[t]he stated basis for the trial court's ruling does not reflect proper consideration of the requisite factors, and does not justify the trial court's order."[2] While husband does not challenge the amount of the fees he was ordered to pay, he asserts that the trial court abused its discretion by directing that they be paid "in one lump sum."

A request for attorney fees in a dissolution of marriage proceeding is governed by section 2030. Effective January 1, 2011, section 2030 was amended to provide in relevant part: "When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court *shall* make an order awarding attorney's fees and costs." (§ 2030, subd. (a)(2), italics added.) We shall conclude that the trial court made the requisite findings here, and that those findings are supported by substantial evidence. As for the fees themselves, we shall conclude that the trial court abused its discretion in requiring that they be paid forthwith in light of the dearth of liquid assets. Accordingly, we shall reverse the judgment to the extent that it requires husband to pay $40,000 in attorney fees and costs in one lump sum and remand the matter to the trial court with directions to modify the judgment to provide that the fees may be paid in manageable installments consistent with husband's actual income and ability. We shall affirm the judgment in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

The parties married in July 1997 and separated in October 2010. They have four minor children together (ages 3, 8, 9, and 12 in June 2012). At all relevant times herein, husband worked as an oral surgeon, and wife worked in the home caring for the parties'

---

[2] Wife did not file a respondent's brief.

2

four children. Husband was self-employed and had recently opened a second office in El Dorado Hills.

On February 4, 2011, the trial court ordered husband to pay wife $23,500 per month in pendente lite child and spousal support "subject to review at Trial and retroactive correction." The court based its calculation on husband's income over the most recent nine-month period, which averaged in excess of $60,000 per month. Husband argued the $60,000 figure was an anomaly and was inconsistent with his historical and projected monthly earnings, which his forensic accountant calculated at $20,574. According to husband, his income was in decline largely due to costs associated with the opening of his second office. The court issued its findings and order after hearing on August 10, 2011.

In October 2011 husband filed a motion to modify child and spousal support retroactive to February 4, 2011, on the ground his actual income was far below the amount utilized by the court in fixing support. The matter was set for a long cause trial on January 25, 2012.

On January 10, 2012, wife filed a motion to continue the trial date, claiming that because husband had failed to pay full support in the amount of $23,500 as ordered, she would be forced to proceed to trial without legal representation.

On May 23, 2012, husband moved to "bifurcate [the issues of pendente lite] child and spousal support from other issues and set immediate trial on these issues," noting that his "motion to modify support filed October 4, 2011 [is] still awaiting hearing." In support of his motion, he submitted the declaration of his forensic accountant who opined that husband's monthly income averaged $22,300 in the 12-month period ending February 2012. The accountant further explained that both of husband's offices were substantially undercapitalized, and as a result, recommended that $5,900 of husband's earnings be used "to restore a reasonable level of working capital," thereby reducing his "available" income to $16,400 per month.

3

On the day husband's motion to bifurcate was set to be heard, wife filed the subject request for attorney and expert fees in the amount of $65,000 ($50,000 for attorney fees and $15,000 for expert fees). At the hearing on the motion to bifurcate, wife, through her counsel, argued that she "needs either support or she needs fees" and asked the court to defer setting the support issues for trial until after the hearing on her request for fees. The trial court set a hearing on husband's motion to bifurcate and wife's request for fees for August 30, 2012.

Wife submitted a declaration in support of her request for attorney and expert fees. In her declaration, she asserted that she could not afford to oppose husband's motion to modify the support order because he was not paying full support in the amount of $23,500 as ordered. She explained that she had no income apart from the support paid by husband and accused husband of decreasing his work schedule "to reduce his support." She also represented that husband was "pay[ing] tens of thousands toward credit card debts (overpaying $17,000 to AMEX in February[)]" and "pay[ing] his chosen business expenses -- often in excess of the minimum payment" to avoid paying her full support. According to wife, husband was "well over $130,000 in support arrears," and wife had been forced to obtain a loan from her parents. According to wife's income and expense declaration, dated June 28, 2012, her sole source of income was the support paid by husband, which in May 2012 was $7,500. She had less than $700 in cash. Her monthly expenses were $16,645, which included roughly $5,500 per month for legal fees. She had paid her counsel approximately $107,600 and owed her an additional $28,000.

Wife also submitted the declaration of her financial expert, who attributed the decrease in husband's income to a decreased work schedule. He opined that "fewer days worked (averaging a 3-day work week), resulting in fewer charges produced . . . are the primary drivers of decreased income available for support." According to wife's expert, "[f]or the nine months in which the number of days worked can be estimated for 2010 and compared to 2011, [husband] has worked a total of 20 fewer days in 2011." The

4

expert acknowledged that "the combined net income of both practices . . . may be impacted by one-time non-recurring startup expenses associated with the new El Dorado Hills practice," but maintained that "fewer days worked . . . is the primary driver of decreased income for support."

Husband opposed wife's request for attorney and expert fees, arguing that he lacked the ability to pay them "after payment of his own obligations," including the "court-ordered spousal and child support." He also claimed that there was no disparity between the parties access to counsel, noting that wife had paid her counsel $107,000, which was $20,000 more than he had paid his counsel, and that wife was unable to establish a need for the fees sought when it was undisputed she had spent in excess of $430,000 over the past 18 months.[3] Husband's income and expense declaration, dated June 21, 2012, showed monthly income totaling $16,400 and monthly expenses of $11,806, not including attorney fees (other than monthly payments to former counsel totaling $300). As of that time, he had paid nearly $90,000 to his three family law attorneys, including $20,000 to his current counsel, and owed them over $40,000 combined. Husband's schedule of assets and debts, also dated June 21, 2012, showed nearly $2 million in debts compared to assets of $275,000, including roughly $3,500 in a personal checking account. Husband's final (but not yet filed) tax return for 2011 reported $163,433 in total federal taxable income for 2011, which amounts to just under $14,000 per month.

Husband submitted the declaration of his office manager who had worked for husband for three and one-half years and for the prior owner of the El Dorado Hills office for over 10 years. She stated that husband offered "a comprehensive array of oral

---

[3] According to husband, wife took $128,145 from the parties' accounts when they separated, received $194,314 in spousal and child support, borrowed $72,000 from her father, and borrowed $37,000 from her mother.

surgery," a scheduler was available for all telephone calls during office hours, and husband continued to market his practice. She opined that "[t]here is no reason, but for the poor economy in the communities we serve, for the practice not to be robust and successful." "Based upon the reduction in patient calls and referrals . . . and the more frequent cost inquiries we receive," she was "certain that the practice is down because fewer patients have coverage and cash, and fewer dentists are inclined to refer out work."

Husband's motion to bifurcate and wife's fee request were heard on August 30, 2012.[4] At the hearing, wife's counsel handed the court a handwritten document, which apparently summarized payments made and amounts due on certain of husband's credit cards. Among other things, wife's counsel stated that husband paid American Express $47,000 one month, when the minimum payment was $286 and the balance owed was $12,675, and argued that "if we add this back to his income later, if we're looking for available income for fees and support, this is one of the ways that we can do that. [¶] The other way that we can do that . . . [is] he's got available credit . . . ." Husband's counsel objected, arguing, "We're talking about documents which are not before the Court" and about information "which was not raised in the reply . . . ." The trial court overruled the objection, and wife's counsel continued: "Let me sum it up: Nine credit cards. He has approximately maybe [$]90,000 available credit on credit cards." Wife's counsel also advised the court that husband had recently vacationed in Hawaii and Utah and argued that such vacations were inconsistent with his claim that he lacked funds to pay wife's attorney fees.

---

[4] Two days before the hearing, wife filed a supplemental declaration, and the next day husband filed a motion to strike it as untimely. At the hearing, the trial court indicated it had not reviewed either document. Wife forfeited any challenge to the trial court's failure to consider her supplemental declaration in ruling on her motion by failing to raise the issue on appeal. Accordingly, we shall not consider the supplemental declaration in reviewing the trial court's ruling.

Husband's counsel argued that husband did not have the ability to pay wife's attorney fees in addition to his own. Counsel observed that husband's monthly income, based on his unfiled 2011 income tax return, was just under $14,000, and he paid wife on average $14,100 per month in support over the past 18 months. Thus, "he has actually paid her more in support than he had." Counsel also pointed out that husband's debts far exceeded his assets, and claimed that husband had no liquid assets. As far as a line of credit, counsel noted that "the credit cards referenced [by wife's counsel] are not [husband's] personal credit cards. . . . These are business credit cards." As for the credit card payments referred to by wife's counsel, husband's counsel explained that husband's office assistant contacted the credit card companies before paying the bills and paid what was actually owed -- she did not wait for a bill to come. She did this to avoid exceeding the credit limits on the cards and having the accounts frozen. Counsel further advised the court that husband owed counsel's law firm approximately $40,000, and that there was a "stop-work order issued on this case." Finally, counsel asserted that wife's inability to pay her attorney and expert was due to her excessive spending, noting that her monthly expenses averaged $24,000, and her spending records reflect that she spends $300 to $500 on hair, tanning, and waxing each month, and has travelled to Hawaii, Mexico, and Utah on multiple occasions. When asked by the court if husband had travelled anywhere within the past year, husband's counsel responded, "He went to Hawaii one time" and "traveled to Utah by car with the children." Counsel further stated, "We're not disputing he makes money. He makes gross receipts are [*sic*] significantly higher than income, but $20,000 a month before we back out some needs to capitalize the business. . . . [B]ut his real income is between 14 and 15 a month." When asked by the court what the support payments have been lately, husband's counsel indicated that husband had paid $7,500 per month in support over the past three months.

A representative from the Department of Child Support Services (DCSS) also appeared at the hearing. She asked the court to set husband's motion to modify support

7

for trial "so that they can get the guideline support that's necessary for our office to enforce." She explained that DCSS had been staying enforcement of the existing support order to avoid husband losing his license.

The trial court agreed that "[w]e need to get this to trial." Accordingly, it granted husband's motion to bifurcate and set his motion to modify support for a two-day trial in January 2013. It also granted wife's request for attorney fees in the amount of $40,000 to be paid forthwith. The court stated, in pertinent part: "[B]ased upon information provided today, . . . I'm going to find that [husband] does have the ability to pay additional attorney's fees, and I would order they be paid in the sum of $40,000." The court confirmed that it had taken into account husband's ability to pay his own attorney fees and understood that "there's already an order that he's supposed to be paying" monthly support in the amount of $23,500. The court continued, "If it's being paid, then we don't have an issue, but it doesn't appear to be getting paid." In response to husband's counsel's assertion that "the Court knows what [husband's] income is," the court responded, "I don't know. I know what he claims it is. It's an unfiled tax return. [¶] . . . [¶] And just for the record I'll indicate that I don't have anything contrary to the $14,000 unfiled tax return, and basically I do have information, apart from that which causes me to believe that [husband] can absorb the Court' s order. And I'll leave it at that." When asked to clarify "what that information is," the court stated: "Information [wife's counsel] supplied today, the fact that he's taken a recent vacation to Hawaii, the fact that he's recently taken a vacation to Utah, the fact that I've been given nothing to indicate -- I shouldn't say nothing, but I haven't been given any tax returns to indicate how little he's made. I've been told, but that's it. I haven't received any evidence at all."

The trial court issued its findings and order after hearing on November 1, 2012, using Judicial Council Forms, form FL-346 (Jan. 1, 2012). The court found in pertinent part: "1. An award of attorney's fees and costs is appropriate because there is a demonstrated disparity between the parties in access to funds to retain or maintain

8

counsel and in the ability to pay for legal representation.  [¶]  a.  The party requested to pay attorney's fees and costs has or is reasonably likely to have the ability to pay for legal representation for both parties.  [¶] b.  The requested attorney's fees and costs are reasonable and necessary."**5**

DISCUSSION

"In a proceeding for dissolution of marriage, . . . the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§ 2030, subd. (a)(1).)

"When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties.  If the findings demonstrate disparity in access and ability to pay, the court *shall* make an order awarding attorney's fees and costs."  (§ 2030, subd. (a)(2), italics added.)

---

**5** Husband filed a motion for reconsideration based on new facts, including the "fact" he had subsequently filed his 2011 tax return.  (Code Civ. Proc., § 1008.)  The trial court denied the motion.  To the extent husband purports to appeal from the order denying the motion for reconsideration, it is not appealable.  (See, e.g., *Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1242; *Branner v. Regents of University of California* (2009) 175 Cal.App.4th 1043, 1050.)  To the extent husband relies on documents presented in conjunction with that motion in support of his appeal, we cannot consider them as they were not before the court when it issued its order directing husband to pay the subject fees.  (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1.)

9

# I
## Standard of Review

Husband submits that a motion for attorney fees and costs in a dissolution action is reviewed for abuse of discretion, citing *In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866 (*Keech*).  *Keech* provides in pertinent part, " 'A motion for attorney fees and costs in a dissolution action is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse, its determination will not be disturbed on appeal. [Citations.]' " (*Ibid.*)  At the time the attorney fees at issue in *Keech* were ordered, section 2030, subdivision (a) stated in pertinent part:  " 'During the pendency of a proceeding for dissolution of marriage . . . , the court *may* upon (1) determining an ability to pay and (2) consideration of the respective incomes and needs of the parties in order to ensure that each party has access to legal representation to preserve all of the party's rights, order any party . . . to pay the amount reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding.' " (*Keech,* at pp. 866-867, quoting former § 2030, subd. (a).)[6]  Section 2030 was amended effective January 1, 2011, to "require[] the court to make an order awarding attorney's fees and costs if the findings demonstrate disparity in access and ability to pay."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 939 (2009-2010 Reg. Sess.) as amended Aug. 16, 2010, p. 2; see also § 2030, subd. (a)(2) ["If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs."].)  As one treatise observes, "The legislative amendments to . . . [section] 2030 that took effect 1/1/11 clearly narrowed court discretion to withhold a pendente lite fees/costs award when needed to equalize litigating strengths from inception of the litigation.  Pre-2011 case law on the subject of the court's discretion in this area

---

[6] In his opening brief, husband erroneously quotes from the pre-2011 version of section 2030, quoted in *Keech* as the operative law.

should be relied on cautiously, keeping in mind this most-recent legislative development." (1 Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2014) par. 5:183.2, p. 5-85 (rev. # 1, 2014), italics omitted.)

Under the current and operative version of section 2030, the court has no discretion to deny a request for attorney fees and costs if it finds that there is a disparity in access to funds to retain counsel, and one party is able to pay for legal representation of both parties. (§ 2030, subd. (a)(2).) We review those findings for substantial evidence. (See *Kevin Q. v. Lauren W.* (2011) 195 Cal.App.4th 633, 642.) Our review is also governed by the well established rule that we review "the trial court's ruling, not its reasoning. [Citation.] If the trial court's ruling or decision is correct upon any theory of law applicable to the case, it will be upheld without regard to the considerations underlying the court's determination. [Citation.]" (*Woods v. Union Pacific Railroad Co.* (2008) 162 Cal.App.4th 571, 576.) The determination of the amount which is "reasonably necessary" to ensure each party has access to legal representation is reviewed under an abuse of discretion standard. (*Kevin Q. v. Lauren W., supra,* 195 Cal.App.4th at p. 642.)

II

The Trial Court's Findings That There Was a Disparity in Access to Funds to Retain Counsel and That Husband Had the Ability to Pay for the Legal Representation of Both Parties Were Supported by Substantial Evidence

As previously mentioned, the trial court made the requisite findings. It found that (1) "[a]n award of attorney's fees and costs is appropriate because there is a demonstrated disparity between the parties in access to funds to retain or maintain counsel and in the ability to pay for legal representation," and (2) husband "has or is reasonably likely to have the ability to pay for legal representation for both parties." Before we consider whether those findings were supported by substantial evidence, we pause to clarify what is and is not evidence. Statements of counsel in argument are not evidence. (*In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11 ["It is axiomatic that the unsworn statements of

11

counsel are not evidence."].) Accordingly, we shall not consider either counsels' statements at the August 30, 2012, hearing concerning husband's credit card payments, available credit, or travel in determining whether the trial court's findings were supported by substantial evidence. We likewise shall not consider the handwritten note wife's counsel apparently provided to the trial court at the hearing as it is tantamount to an unsworn statement by counsel and was not admitted into evidence. That the trial court may have relied on those statements or the note in making its findings is of no consequence where, as here, we independently review the record to determine whether substantial evidence supported those findings. As detailed above, we are concerned with the court's ruling, not its reasoning. (*Woods v. Union Pacific Railroad Co.*, *supra*, 162 Cal.App.4th at p. 576.)

Viewing the evidence in the light most favorable to the trial court's findings, as we must (*Fergus v. Songer* (2007) 150 Cal.App.4th 552, 567), the evidence showed that wife was a stay-at-home mother of four minor children. Her income was limited to the support paid by husband, which amounted to $7,500 per month during the three months prior to the hearing. Husband was a self-employed oral surgeon whose income had purportedly decreased over 66 percent since being ordered to pay child and spousal support in the amount of $23,500 per month. Husband's monthly income in the nine months leading up the support order exceeded $60,000, while his financial records for the following 12 months showed a monthly income of approximately $22,300 per month. While husband's forensic accountant attributed the decrease in income to the opening of the El Dorado Hills office and his office manager attributed it to a poor economy, wife presented evidence that husband was attempting to depress his income available for support by overpaying his credit cards and business expenses and working less. In particular, wife presented evidence in the form of a declaration that husband was "pay[ing] tens of thousands toward credit card debts (overpaying $17,000 to AMEX in February[)]" and "pay[ing] his chosen business expenses -- often in excess of the

12

minimum payment" to avoid paying her full support. She also presented evidence that husband worked approximately 20 fewer days in 2011 than 2010, resulting in less income. From this evidence the trial court reasonably could have inferred that husband's actual income exceeded the amounts reflected in his income and expense declaration and unfiled 2011 tax return, and/or that he was capable of earning more money. A trial court may rely on imputed income in adjudicating an attorney fee request. (3 Hogoboom & King, Cal. Practice Guide: Family Law, *supra,* par. 14:173, p. 14:60; see, e.g., *In re Marriage of Berger* (2009) 170 Cal.App.4th 1070, 1085.)

Husband makes much of the fact that he had been ordered to pay $23,500 in monthly support; an amount he contends exceeded his monthly income. Putting aside the income component of his argument (which is addressed above), it is undisputed that husband disregarded the court's order. Indeed, in the three months prior to the hearing on wife's fee request, husband paid just $7,500 per month in support. The trial court was permitted to take this fact into account in determining husband's ability to pay wife's attorney fees.

Husband also disputes wife's inability to pay her own fees, noting that she expended or had access to approximately $430,000 (or $24,000 per month) in the 18 months prior to filing her motion for fees. As husband acknowledges, $141,000 of that amount was spent on legal and expert fees; thus, wife spent $289,000 (or just over $16,000 per month) on nonlitigation related expenses.[7] Assuming for argument's sake

---

[7] The $24,000 per month husband contends wife expended is roughly equal to the amount of support he had been ordered to pay in pendente lite child and spousal support. It is worth noting that "[t]he purpose of temporary spousal support is to maintain the status quo as much as possible pending trial. [Citations.] By contrast, permanent spousal support is supposed to reflect a complex variety of factors established by statute and legislatively committed to the trial judge's discretion, including several factors which tend to favor reduced support, such as the 'goal' that the supported spouse should become

13

that wife's expenditures were excessive and that such monies could have been used to cover the additional attorney and expert fees wife seeks, as husband contends, "[t]he fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (§ 2032, subd. (b).) "In assessing the applicant's relative 'need' and the other party's ability to pay, the court may take into account 'all evidence concerning the parties' current incomes, assets, and abilities, including investment and income-producing properties.' " (*In re Marriage of Terry* (2000) 80 Cal.App.4th 921, 933.) As previously discussed, wife was a stay-at-home mother of four minor children from the marriage and was totally dependent upon husband, an oral surgeon, for her income. While husband had been ordered to pay wife $23,500 per month in spousal and child support, he actually paid her far less. Given the parties' relative incomes and abilities, the court did not err in ordering husband to pay wife $40,000 in fees and costs.

While husband does not challenge the amount of the fees he was ordered to pay, he appears to assert that the trial court abused its discretion by directing that they be paid "in one lump sum." In *In re Marriage of Schulze, supra,* 60 Cal.App.4th at pages 531 and 532, the court reversed a judgment to the extent that it required the husband to pay $7,500 in attorney fees in a lump sum where it was undisputed that neither party had any savings or liquid assets and the husband's parents had lent him $8,000 to pay his own fees. "In light of the absence of any liquid assets, it was unreasonable not to have allowed [the husband] to pay the $7,500 attorney fee order in manageable installments,

self-supporting within a reasonable period of time." (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 525.)

14

consistent with the income he had left after he paid the family support order." (*Id.* at p. 532.) Here, it is undisputed that the parties have less than $5,000 in liquid assets. While the record contains evidence from which the trial court reasonably could conclude husband may have access to additional funds in the future by reducing his credit card payments and/or working more, there is no evidence to support a finding that he had the ability to pay $40,000 forthwith.

## DISPOSITION

The judgment is reversed to the extent that it requires husband to pay $40,000 in attorney fees and costs in a lump sum. The matter is remanded to the trial court with directions to modify the judgment to provide that husband's obligation to pay $40,000 in attorney fees and costs may be paid in manageable installments consistent with his actual income and abilities. The judgment is affirmed in all other respects. In the interests of justice, each party will bear his or her own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


                                          BLEASE            , Acting P. J.


We concur:


    NICHOLSON       , J.


    MAURO          , J.

15