Filed 7/24/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| EUCASIA SCHOOLS WORLDWIDE, INC., <br><br>                    Appellant, <br><br> v. <br><br> DW AUGUST CO., et al. , <br><br>                    Respondents. | 2d Civil No. B238399 <br> (Super. Ct. No. CV100445) <br> (San Luis Obispo County) |

Eucasia Schools Worldwide, Inc., appellant, sued its landlord, DW August Company (DW), and Wendle Schoniger, respondents. The judgment was entered after a jury returned a special verdict in favor of respondents. The judgment awarded DW attorney fees of $124,997.

The sole contention is that the trial court erroneously denied its motion for a directed verdict on a cause of action for breach of contract. The theory is that DW breached the lease as a matter of law because it failed to give proper notice of its intent to inspect the leased property. As we shall explain, a lease notice provision can be modified by the lessee's direction to give notice to the lessee's counsel.

*Factual and Procedural Background*

We summarize the evidence in the light most favorable to respondents, resolving all conflicts in their favor. (See, e.g. *Joaquin v. City of Los Angeles* (2012) 202 Cal.App.4th 1207, 1218.)

DW leased real property (the premises) to appellant, which operated a private elementary school. Respondent Wendle Schoniger was the president and chief executive officer of DW.

The relationship between appellant and respondents was strained. In November 2009 DW filed an unlawful detainer action against appellant. In April 2010 DW filed an action for injunctive relief against appellant. Starting in 2009, respondents usually communicated with appellant through DW's counsel, Ogden & Fricks. Starting in April 2010, respondents always communicated with appellant through DW's counsel.

In April 2010 DW listed the premises for sale with a real estate broker. To facilitate the sale, Schoniger decided to have the premises inspected by a building inspector. Schoniger testified that she wanted to "find out all the things that may or may not be wrong with [the premises], and have them repaired so when a buyer came, the building would be in tiptop shape."

The lease provided that DW had the right to inspect the premises "at reasonable times after reasonable notice." The lease provided that all notices to appellant must be in writing and delivered or mailed to the premises.

In March 2010 DW's counsel wrote a letter to appellant concerning the security deposit and guarantor of the lease. Pursuant to the notice provision of the lease, the letter was mailed to appellant at the premises. At that time appellant was represented by Attorney Dennis Balsamo. In reply to the letter from DW's counsel, on March 16, 2010, Balsamo's legal assistant wrote to respondents: "Please have NO DIRECT CONTACT with our client without the express permission of this office." Balsamo knew that, since October or November 2009, DW's counsel had been acting as property manager of the premises.

On April 13, 2010, DW's counsel wrote a letter to Balsamo noting that DW had the right to inspect the premises at reasonable times after reasonable notice. DW counsel's inquired: "Please advise who we are to contact regarding property

2

inspections in your upcoming absence." Balsamo did not respond to the inquiry.

In view of Balsamo's letter of March 16, 2010, DW's counsel did not mail the notice of inspection to appellant at the premises. Attorney Roy Ogden, a member of the law firm representing DW, testified that after Balsamo's letter he "stopped communicating directly to [appellant] because [he] had been instructed by their lawyer not to do that anymore." Several months later and still having received no response to his April 13 letter, Ogden mailed the notice of inspection to Balsamo's office. The notice, dated July 14, 2010, stated, "[O]ur client and its representatives will be present on the leased premises . . . on Sunday, July 18, 2010 for the purposes of inspecting the premises." Balsamo testified that he did not receive the notice.

On the morning of July 18, 2010, Schoniger went to the premises accompanied by a locksmith and a building inspector. Pursuant to Schoniger's instructions, the building inspector cut a metal chain that blocked entry into the parking lot for the premises. Schoniger, the locksmith, and the inspector drove into the lot and parked their vehicles.

The locksmith picked the lock on a door and opened it, activating the burglar alarm. The alarm company telephoned Mark Charbonneau, "the first person on the call list." Charbonneau was an independent contractor who provided gardening services for appellant. When the alarm was activated, he was in the premises parking lot.

Charbonneau contacted Schoniger, who said she was conducting an inspection. Charbonneau knew that Schoniger was the owner, so he told the alarm company that there was no problem. Charbonneau did not contact appellant. The building inspector proceeded to inspect the premises and wrote a detailed 30-page report.

Four days later appellant filed a complaint against respondents for damages and injunctive relief. The complaint consisted of 11 causes of action, including one for breach of contract that was alleged solely against DW. All of the causes of action arose from the inspection. The complaint asserted that, "without giving any prior

3

required notice to [appellant], and without [its] consent," respondents had unlawfully and forcibly entered the premises.

During the jury trial, appellant made a motion for a directed verdict in its favor on the cause of action for breach of contract. The motion was based on DW's failure to prove that, in compliance with the lease, it had given reasonable notice to appellant of its intention to inspect the premises. The motion was denied.

The jury returned a special verdict in respondents' favor. On the breach of contract cause of action, the jury answered "no" to the following question: "Did DW August Company fail to do something that the contract required it to do or did DW August Company do something that the contract did not allow it to Do?"

### Directed Verdict Rules

"[A] motion for a directed verdict is in the nature of a demurrer to the evidence. [Citations.] . . . A directed verdict may be granted only when, disregarding conflicting evidence, giving the evidence of the party against whom the motion is directed all the value to which it is legally entitled, and indulging every legitimate inference from such evidence in favor of that party, the court nonetheless determines there is no evidence of sufficient substantiality to support the claim or defense of the party opposing the motion, or a verdict in favor of that party. [Citations.]" (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 629-630, fn. omitted.) On appeal we apply the substantial evidence standard of review. "Only if there was *no* substantial evidence in support of the verdict could it have been error for the trial court . . . to have denied [appellant's] motion for directed verdict. [Citation.]" (*Howard v. Owens Corning*, *supra*, 72 Cal.App.4th at p. 630.)

### Directed Verdict on Breach of Contract Cause of Action

Appellant contends that there is no substantial evidence in support of the verdict on the breach of contract cause of action because DW violated the lease notice provision as a matter of law. The provision reads: "The addresses noted adjacent to a Party's signature on this Lease shall be that Party's address for delivery or mailing of

4

notices. Either Party may by written notice to the other specify a different address for notice, except that upon Lessee's taking possession of the Premises, the Premises shall constitute Lessee's address for notice." Because there is no conflicting extrinsic evidence on the meaning of this provision, its interpretation is a pure question of law that we review de novo. (*Parsons v. Bristol Develop. Co.* (1965) 62 Cal.2d 861, 865-866; *In re Martinez* (2012) 210 Cal.App.4th 800, 815.)

"A lease agreement is subject to the general rules governing the interpretation of contracts. [Citation.] 'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.' (Civ.Code, § 1636.) When possible, the parties' mutual intention is to be determined solely from the language of the lease. 'The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," . . . controls judicial interpretation.' [Citation.]" (*Bill Signs Trucking, LLC v. Signs Family Ltd. Partnership* (2007) 157 Cal.App.4th 1515, 1521.)

Read literally and in isolation, the lease notice provision requires that the notice of inspection be mailed to appellant at the premises. (See *People v. Clayburg* (2012) 211 Cal.App.4th 86, 91.) But we cannot conclude that, when the parties signed the lease, they intended that the lease notice provision could not be superseded. Here emphatic written instructions to the contrary were given by the lessee. On March 16, 2010, Balsamo's legal assistant, on attorney letterhead, directed DW's counsel to "have NO DIRECT CONTACT with" appellant without Balsamo's "express permission."

Given the apparent animosity between the parties, evidenced by prior litigation, we certainly understand tht lessee wanted to interpose counsel in further dealings with lessor. Balsamo knew that DW's counsel was acting as property manager of the premises and, in effect, told the property manager to contact him instead of appellant in matters pertaining to the lease.

On April 13, 2010, DW's counsel wrote a letter to Balsamo asking who to "contact regarding property inspections in your upcoming absence." The letter implied

5

that notice of the inspection should be given to Balsamo or, in his absence, to whomever Balsamo designated. Balsamo did not respond to the letter's inquiry. If Balsamo believed that the lease required notice to be given directly to appellant at the premises, he should have said so.

It would be unfair to penalize DW because it had complied with the written instructions of appellant's counsel. We go further: It would be absurd if the law required (1) strict adherence to the letter of the contract, and (2) disregard of counsel's direction not to contact appellant. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) "Language involving an absurdity is rejected . . . ." (*Jackson v. Puget Sound Lumber Co.* (1898) 123 Cal. 97, 100.) " 'Interpretation of a contract "must be fair and reasonable, not leading to absurd conclusions. [Citation.]" ' [Citation.]" (*Bill Signs Trucking, LLC v. Signs Family Ltd. Partnership*, *supra*, 157 Cal.App.4th at p. 1521; see also *California Nat. Bank v. Woodbridge Plaza LLC* (2008) 164 Cal.App.4th 137, 143 ["Construction cannot lead to unfair or absurd results but must be reasonable and fair"].)

Accordingly, DW's counsel was lawfully permitted to mail notice of the inspection to appellant's counsel instead of directly to appellant at the premises. It cannot be seriously argued that, when the parties signed the lease, they intended that notice to appellant's counsel would be ineffective under the particular circumstances of this case. Although we do not decide the appeal on this basis, it also seems obvious that appellant was equitably estopped from alleging that the giving of notice to counsel violated the lease notice provision. "The object of equitable estoppel is to 'prevent a person from asserting a right which has come into existence by contract, statute or other rule of law where, because of his conduct, silence or omission, it would be unconscionable to allow him to do so.' [Citation.]" (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 891.)

*Disposition*

The judgment, including the award of attorney fees, is affirmed. Respondents shall recover their costs on appeal. In addition, respondents are awarded reasonable attorney fees on appeal, to be determined by the trial court on noticed motion.

CERTIFIED FOR PUBLICATION.


YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.

7

Donald G. Umhofer, Judge

Superior Court County of San Luis Obispo

_____

Neil S. Tardiff; Tardiff Law Offices, for Appellant.

Roy E. Ogden, Shae Luchetta; Ogden & Fricks, for Respondents.