Filed 3/25/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LEGENDARY INVESTORS GROUP NO. 1, LLC,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>DANIEL J. NIEMANN et al.,<br><br>        Defendants and Respondents. | B245620<br><br>(Los Angeles Country<br>Super. Ct. No. BC435774) |

APPEAL from a judgment of the Superior Court of Los Angeles Country, Susan Bryant-Deason, Judge. Reversed and remanded with directions.

The Soni Law Firm, M. Danton Richardson and Leo E. Lundberg, Jr., for Plaintiff and Appellant.

Zimmerman, Axelrad, Meyer, Stern & Wise, Brian W. Zimmerman (*Pro Hac Vice*), Law Office of Ernesto F. Aldover, Ernesto E. Aldover, for Defendants and Respondents.

_____

Legendary Investors Group No. 1, LLC, appeals from a judgment of nonsuit in favor of respondents Daniel J. Niemann, NPI Century City, LLC, and Niemann Properties, Inc., in an action for breach of commercial guaranty agreements. We agree with appellant that the motion for nonsuit was improperly granted. The judgment is reversed and the case remanded for a new trial.

## FACTUAL AND PROCEDURAL SUMMARY

In 2007, DB NPI Century City, LLC (DB NPI) obtained a construction line of credit for over $9.3 million from East West Bank. DB NPI's primary members are Drawbridge Special Opportunity Fund (Drawbridge) and respondent NPI Century City, LLC. The latter is managed by respondent Niemann through respondent Niemann Properties, Inc. (Niemann Properties). The loan was secured by a deed of trust and guaranteed by respondents. The guaranties included various waivers, such as a waiver of all rights and defenses arising by reason of "the cessation from any cause whatsoever[,] other than payment in full, of the indebtedness" or "any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower . . . or the indebtedness."

Due to project changes, East West Bank obtained an updated appraisal, which showed a significant decrease in the value of the construction project. As a result, the bank conditioned the disbursement of future loan advances on DB NPI's putting up $1.7 million in additional equity. After further negotiations, Niemann Properties eventually deposited over $114,000, and Drawbridge applied for a letter of credit in the amount of $841,280. On Drawbridge's application in May 2008, Wells Fargo Bank issued an irrevocable standby letter of credit for that amount, "as security for credit facilities which [East West Bank] will grant to [DB NPI]."

Construction was delayed for various reasons, and the project was not completed by the time the loan matured in May 2009. When the loan came due and was not paid, East West Bank drew on the deposit and letter of credit. As required by the letter of credit, the bank's draft on it included the following language: "We hereby claim

2

[$]841,280.00 . . . . The amount claimed by us represents and covers the unpaid indebtedness including principal, interest and all charges and expenses incurred due to East West Bank arising from the granting of banking facilities to DB NPI Century City, LLC . . . ." After applying these funds to the loan, East West Bank sold the loan documents to appellant for $4.5 million. At the time of sale, the bank's records showed an outstanding loan balance of over $5.4 million.

DB NPI rejected appellant's demand for payment, and appellant foreclosed on the deed of trust, buying the property for a little over $2 million. In 2010, appellant sued DB NPI and respondents to recover the deficiency. The parties stipulated to the dismissal of DB NPI from the lawsuit. (See *Legendary Investors Group No. 1, LLC v. DB NPI Century City, LLC* (Aug. 21, 2013, No. B244646 [nonpub. opn.]).)[1] The trial court denied appellant's motion for summary judgment, sustaining respondents' evidentiary objections. At the outset of the jury trial, the court denied what it deemed to be appellant's motion in limine to preclude respondents from presenting evidence of their defense that drawing down on the letter of credit extinguished the debt. The court did not allow appellant to use impeachment evidence that respondents' counsel claimed was covered by a protective order issued in the East West Bank case. After appellant rested, the court granted respondents' motion for nonsuit, finding that appellant failed to make a prima facie case because the debt was extinguished when East West Bank drew down on the letter of credit.

Appellant filed a timely appeal from the judgment.

---

[1] Meanwhile, DB NPI sued appellant and East West Bank in *DB NPI Century City, LLC v. East West Bank* (Super. Ct. Los Angeles County, 2012, No. BC425405, hereafter "the East West bank case"), alleging the debt was extinguished, and the bank was liable for relying on a flawed appraisal, delaying disbursements on the loan, and extorting additional funds, among other things. Appellant was dismissed from the lawsuit early on without prejudice, and the lawsuit against the bank eventually was settled for $2 million. The release of claims and defenses in the settlement agreement expressly excluded claims and defenses against appellant.

## DISCUSSION

Appellant challenges the trial court's denial of its summary judgment motion and motion in limine, the grant of respondents' motion for nonsuit, and the rejection of appellant's impeachment evidence.

As a general rule, the denial of summary judgment is harmless error after a full trial covering the same issues. (*Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1010–1011.) The denial of the motion may constitute prejudicial error if the motion is denied on a legal ground not presented at trial. (*Gackstetter v. Frawley* (2006) 135 Cal.App.4th 1257, 1269 [reversible error where summary judgment motion showed plaintiff's claim barred by settlement].) Here, appellant's motion was denied for lack of evidence after the trial court sustained respondents' evidentiary objections to the declaration of appellant's principal, Surjit Soni. Attached to the declaration were all loan, assignment, and foreclosure documents, and in the declaration Soni referenced these documents and stated the amount of the claimed deficiency. As appellant acknowledges, this evidence was admitted at trial. Since the summary judgment motion presented the same issues that were covered at trial, and appellant was allowed to introduce evidence the court had rejected earlier, any error regarding the admissibility of this evidence at the summary judgment stage is harmless and moot.

Appellant argues the court incorrectly denied its motion in limine to preclude respondent's defense that the debt was extinguished by the letter of credit. The twofold basis for this motion was that DB NPI had settled its lawsuit against East West Bank and that, in the guaranties, respondents had waived any defense based on the bank's release of the debt or the borrower. When a motion in limine "results in the entire elimination of a cause of action or a defense, we treat it as a demurrer to the evidence and review the motion de novo . . . ." (*County of Glenn v. Foley* (2012) 212 Cal.App.4th 393, 398.)

Appellant contends the dismissal with prejudice following a settlement of the East West Bank case constitutes a final judgment on the merits, or retraxit, and precludes relitigating the issue whether the letter of credit extinguished the debt. Res judicata and collateral estoppel do generally preclude relitigating the same claims and issues after a

4

dismissal with prejudice. (See *In re Estate of Redfield* (2011) 193 Cal.App.4th 1526, 1533 ["dismissal with prejudice is the modern name for a common law retraxit" and principles of res judicata determine what issues are barred by it].) However, "parties may by agreement limit the legal effect of a dismissal with prejudice so that it would not constitute a retraxit and affect their rights in a later pending action." (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1334, citing *American Bankers Ins. Co. v. Avco-Lycoming Division* (1979) 97 Cal.App.3d 732, 737; *Manning v. Wymer* (1969) 273 Cal.App.2d 519, 526.) The mutual releases in the settlement agreement in the East West Bank case expressly exclude claims and defenses by and against appellant. Thus, the dismissal of East West Bank in that case does not affect respondents' rights in this one.

Appellant's alternative theory in the motion in limine was that the guarantors had waived any defense based on the lender's release of the debt or borrower. The trial court rejected that theory, apparently believing respondents' defense raised a triable issue of fact. Respondents argue this was not a prejudicial error because the motion for nonsuit was granted before they presented a defense. That is incorrect.

Defensive matter was elicited during appellant's case-in-chief because Niemann was called as an adverse witness under Evidence Code section 776. (See *Miller v. Dussault* (1972) 26 Cal.App.3d 311, 318 ["[a]lthough received during plaintiff's case, evidence elicited from an adverse party under section 776 is not treated as the plaintiff's evidence"].) The letter of credit was pre-admitted as a defense exhibit along with appellant's exhibits at the start of trial. Its language became relevant during appellant's case-in-chief only because Niemann insisted that it showed the debt was extinguished. In granting respondents' motion for nonsuit, the trial court essentially adopted the defense theory: it found that the express language of the letter of credit "clearly states that the borrower['s] indebtedness is extinguished upon drawdown of the letter of credit." The court then concluded that, because there can be no guaranty without a loan, the guarantors' obligation was extinguished along with the borrower's. That conclusion was

5

erroneous because it failed to take into account evidence that the debt was not actually paid in full and to give effect to the waivers in the guaranties.

We review the grant of a nonsuit de novo. (*Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 43.) We view the evidence in the light most favorable to appellant, resolving all conflicts in its favor. (*Woods v. Union Pacific Railroad Co.* (2008) 162 Cal.App.4th 571, 576.) We disregard unfavorable testimony received from adverse witnesses appellant called under Evidence Code section 776. (*Ashcraft v. King* (1991) 228 Cal.App.3d 604, 611 [in determining motion for nonsuit, testimony favorable to plaintiff adduced from an adverse witness under Evid. Code, § 776 must be taken as true and unfavorable portions disregarded].) "If there is substantial evidence to support [appellant's] claim, *and* if the state of the law also supports that claim, we must reverse the judgment. [Citation.]" (*Margolin v. Shemaria* (2000) 85 Cal.App.4th 891, 895.)

On appeal, the parties argue extensively whether East West Bank's drawing down on the letter of credit extinguished DB NPI's debt because the letter of credit required the draft to state that the claimed amount "represents and covers the unpaid indebtedness." Respondents contend the language included in the letter of credit and draft represents DB NPI's agreement with East West Bank that the bank's drawing down on the letter of credit would eliminate DB NPI's entire debt. Appellant disagrees. It points out that a letter of credit creates a contractual relationship between the issuing bank (here Wells Fargo Bank) and the beneficiary of the letter of credit (here East West Bank) that is independent from the underlying agreement (here between DB NPI and East West Bank). (See *California Bank & Trust v. Piedmont Operating Partnership, L.P.* (2013) 218 Cal.App.4th 1322, 1334.) The "independence principle" is relevant to determining the issuing bank's liability, which is not an issue in this appeal. (See *id*. at pp. 1335–1336; see also *Mitsui Manufacturers Bank v. Texas Commerce Bank-Fort Worth* (1984) 159 Cal.App.3d 1051, 1055 ["[g]eneral references to underlying agreements are surplusage" unless they explicitly create conditions for honoring drafts].)

6

Whether or not it contains a reference to an agreement between DB NPI and East West Bank, the letter of credit does not lend itself to respondents' interpretation. "'[E]ven if one provision of a contract is clear and explicit, it does not follow that that portion alone must govern its interpretation; the whole of the contract must be taken together so as to give effect to every part.' [Citation.]" (See *Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 799.) The letter of credit purports to be security for *future* "credit facilities." In light of that provision, the statement that the claimed amount "represents and covers the unpaid indebtedness" does not clearly show an intent to extinguish the entire debt, including any pre-existing balances. Significantly, the letter of credit expressly allows for multiple and partial drawings. That provision cannot be given effect if, as respondents contend, a draft on the letter of credit for only a part of the full amount committed has the effect of eliminating the entire debt. The opinion of the bank's custodian of records on the meaning of the phrase "unpaid indebtedness" is irrelevant since contract interpretation is a legal question for the court. (See e.g. *Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1444 [witness's "opinion as to the meaning and legal effect of a contract" was inadmissible as to interpretation of contract].)

Niemann testified at trial that East West Bank drafted the statement that the claimed amount "represents and covers the unpaid indebtedness," which was included in the letter of credit issued by Wells Fargo Bank. But as appellant has pointed out, it is unclear that his testimony was based on personal knowledge so as to allow a construction of that statement against the drafter since Niemann acknowledged that someone else negotiated the letter of credit with East West Bank. Niemann's own understanding of the effect of the bank's drawing down on the letter of credit is not competent extrinsic evidence. (See *PV Little Italy, LLC v. MetroWork Condominium Assn.* (2012) 210 Cal.App.4th 132, 157 [a party's "subjective statements of 'understanding' are irrelevant . . . , particularly where there is no evidence that [the other party] had the same understanding"].) Since Niemann was called as an adverse witness, for purposes of the nonsuit we also may disregard the portions of his testimony that were unfavorable to

7

appellant.  (See *Ashcraft v. King*, supra, 228 Cal.App.3d at p. 611.)  Thus, we may disregard his claim that the bank agreed the letter of credit would be "the last monies in," or the bank's last resort on the debt.[2]

Moreover, whether the bank's decision to draw down on the letter of credit before pursuing other security compromised its position with regard to DB NPI's debt is not dispositive of respondents' obligation under the guaranties.  A guaranty "is a separate and independent obligation from that of the principal debt.  [Citations.]"  (*United Central Bank v. Superior Court* (2009) 179 Cal.App.4th 212, 215–216.)  By their own terms, the guaranties continue in force until the indebtedness is "fully and finally paid and satisfied."  Respondents' construction of the statement in the letter of credit and in the bank's draft that $841,280 "represents and covers the unpaid indebtedness" conflicts with the bank's own records, which show an outstanding balance of more than $5 million after the letter of credit was applied to the debt.  For purposes of the nonsuit, this conflict must be resolved in appellant's favor.  (See *Woods v. Union Pacific Railroad Co.*, *supra*, 162 Cal.App.4th at p. 576.)  In light of the remaining balance, it cannot be said that the debt was actually paid in full.[3]

---

[2] Because of that conclusion, we do not consider appellant's argument that it should have been allowed to impeach Niemann's claim with evidence from the East West Bank case.

[3] At oral argument, respondent's counsel cited *Doria v. International Union* (1961) 196 Cal.App.2d 22.  The nonsuit in that case was upheld because the plaintiff, a former union officer, had affirmatively undertaken to prove in his case-in-chief that the union president had authority to bind the union on two promissory notes made in the plaintiff's favor, instead of relying on the usual presumptions applicable to negotiable instruments.  (*Id*. at p. 32.)  Because the evidence showed the president lacked authority to make the notes, the plaintiff could not rely on presumptions or unsubstantial discrepancies to create an evidentiary conflict.  (*Id*. at pp. 33–34.)  The case is inapposite.  The court did not consider the treatment of an adverse witness's testimony in the context of a nonsuit, and "'"cases are not authority for propositions not considered."'"  (*McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626.)  Nor is the existence of a substantial unpaid balance, as shown by the records of East West Bank, a minor discrepancy in the evidence before us.

8

The waivers specifically limit the guarantors' defenses arising by reason of "the cessation from any cause whatsoever[,] other than payment in full, of the indebtedness." They also broadly limit the guarantors' defenses based on acts by the lender that release either the debt or the borrower. It has long been recognized that "a surety is not discharged by release of the principal where 'the surety consents to remain liable notwithstanding the release.' [Citations.]" (*Bloom v. Bender* (1957) 48 Cal.2d 793, 800; see also *River Bank America v. Diller* (1995) 38 Cal.App.4th 1400, 1413.) Thus, whether or not the bank's draw down on the letter of credit had the effect of releasing the debt or DB NPI, the guarantors remained obligated under the waivers in the guaranties because the debt was not actually paid in full.

The trial court erred in granting respondents' motion for nonsuit.

## DISPOSITION

The judgment is reversed and the matter is remanded for a new trial. Appellant is entitled to its costs on appeal.

CERTIFIED FOR PUBLICATION

EPSTEIN, P. J.

We concur:

WILLHITE, J.

MANELLA, J.

9