Filed 6/24/14  San Diego Court Employees Assn. v. San Diego County Superior Court CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COUNTY COURT EMPLOYEES ASSOCIATION, | D064082 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00085234-CU-WM-CTL) |
| SAN DIEGO COUNTY SUPERIOR COURT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Steven Z. Perren, Judge.  (Associate Justice of the Court of Appeal, Second District, assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Hayes & Cunningham and Dennis J. Hayes for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Nate J. Kowalski, Jennifer D. Cantrell and Lisa M. Carrillo for Defendants and Respondents.

The San Diego County Court Employees Association (the Association) appeals the judgment denying its petition for writ of mandate against the San Diego County Superior Court and its executive officer, Michael Roddy (collectively, the Superior Court), by which the Association sought to compel the Superior Court to reinstate employees allegedly laid off in violation of the collective bargaining agreement between the Association and the Superior Court. We affirm.

I.

BACKGROUND

The Association represents employees in three bargaining units in their relations with the Superior Court pursuant to the Trial Court Employment Protection and Governance Act (Gov. Code, § 71600 et seq.). In August 2011, the Association and the Superior Court executed a memorandum of agreement (the Memorandum), a comprehensive agreement governing wages, hours, and other terms and conditions of employment.

Article 13 of the Memorandum defines the procedures to be followed in the event of a layoff. Under that provision, the executive officer may determine a reduction in work force is necessary due to a lack of funds, among other reasons. In that event, the executive officer "may establish a layoff list by classification/position within a program or function of the Court," and employees "shall be laid off on the basis of a seniority rating of the employees in the class of layoff, lowest rating first." The seniority of employees hired before June 24, 2005, was based only on their length of continuous service with the Superior Court and the San Diego County Municipal Court. The

2

seniority of employees hired on or after June 24, 2005, was based on their length of continuous service with the Superior Court, the Municipal Court, and the County of San Diego.[1]

In June 2012, Roddy issued a memorandum notifying all employees and their bargaining representatives that funding for the Superior Court had been substantially reduced for the 2012-2013 fiscal year, and a further reduction was expected for the 2013-2014 fiscal year. As a result, Roddy anticipated that approximately 270 employees would be laid off over the two fiscal years. In particular, Roddy proposed closing and restructuring up to 40 courtrooms and thereby eliminating courtroom staff positions held by employees represented by the Association.

During the two months after Roddy's announcement of anticipated layoffs, the Association and the Superior Court met to discuss the layoff of employees in bargaining units represented by the Association. In August 2012, the parties agreed to a letter of understanding (the Letter), which was intended "to supplement, clarify and/or amend [a]rticle 13 of the [Memorandum]." Section II of the Letter listed 18 employee classifications, including independent calendar clerk, and stated: "Employees in each separate classification identified for layoff shall be laid off on the basis of a court-wide seniority rating within that classification, lowest rating first." Section III of the Letter amended a sentence of article 13 of the Memorandum to correct a typographical

---

[1]     It is therefore possible an employee hired on or after June 24, 2005, could have a seniority rating higher than an employee hired earlier, because the seniority rating formula for an employee hired after June 24, 2005, includes service with the County of San Diego, but the seniority rating formula for an earlier-hired employee does not.

omission, so that the corrected sentence read: "In the event there is a layoff that occurs after June 24, 2005 for classes in the [Association's] bargaining units, the order of layoff will be based on use of the seniority list established under 13.B below first." (Underlining omitted.) Immediately after the corrected sentence, the Letter added a new sentence, which is the focus of this appeal: "Once all employees hired on or after June 24, 2005 are laid off, the layoff process contained herein shall apply to employees hired before June 24, 2005." The Letter also authorized employees to avoid layoffs by "bumping" employees with less seniority in two circumstances: (1) an employee in a position designated for elimination could demote to a previously held position that was currently held by another employee with a lower seniority rating; and (2) an independent calendar clerk who previously held a courtroom clerk position could laterally transfer to a courtroom clerk position currently held by another employee with a lower seniority rating.

In September 2012, the Superior Court provided the Association with a list of current employees represented by the Association, separating them by classification and identifying their seniority, and notified the Association it planned to eliminate 17 independent calendar clerk positions. The Superior Court eliminated the positions of 15 independent calendar clerks who had been hired before June 24, 2005. All but one of those 15 clerks chose demotion in lieu of layoff.

Based on the elimination of the independent calendar clerk positions, the Association submitted a formal written grievance in accordance with the procedures outlined in the Memorandum. The Association alleged the Superior Court breached

4

section III of the Letter by laying off employees who had been hired before June 24, 2005, before it had laid off all employees hired on or after that date. To remedy this alleged violation, the Association sought reinstatement of the wrongfully laid-off employees with full back pay and benefits, costs, and attorney fees. The Superior Court rejected the grievance.

The Association challenged the rejection of its grievance by filing in the trial court a verified petition for writ of mandate (Code Civ. Proc., § 1085), in which it alleged the Superior Court breached section III of the Letter by laying off employees hired before June 24, 2005, before it had laid off all later-hired employees. The Association sought a writ compelling the Superior Court to comply with the Letter by reinstating employees improperly laid off and restoring any lost wages and benefits. The Superior Court filed an answer denying any breach, asserting affirmative defenses, and praying that the Association take nothing by its petition.

The parties submitted memoranda of points and authorities and declarations in support of their respective interpretations of the layoff provisions of the Memorandum and the Letter.[2] The trial court held a hearing on the Association's petition and issued a written statement of decision concluding the Memorandum and the Letter required layoffs by seniority within each affected classification, and rejecting the Association's

---

[2]    The parties also submitted evidentiary objections to the declarations. The trial court sustained some objections and overruled others. Since no party challenges the evidentiary rulings on appeal, we deem any issues concerning their correctness abandoned and disregard any evidence to which objections were sustained. (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014-1015; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

5

argument that, regardless of classification, all employees hired on or after June 24, 2005, had to be laid off before any employees hired earlier could be laid off. Entry of a judgment denying the petition followed.

II.

DISCUSSION

The Association contends the trial court should have granted its petition for writ of mandate because the Superior Court breached the Memorandum and the Letter by laying off employees in the Association's bargaining units hired prior to June 24, 2005, before laying off all employees in the Association's bargaining units hired later. We reject this contention because it is inconsistent with the governing contractual provisions and rules of contract interpretation.

A.   *The Appeal Is Not Moot*

Before turning to the merits of the appeal, we must make a brief procedural detour to dispose of the Superior Court's argument the Association's appeal is moot and should be dismissed. Citing *Keith Garrick, Inc. v. Local No. 2* (1963) 213 Cal.App.2d 434 and *Paoli v. Cal. & Hawaiian Sugar etc. Corp.* (1956) 140 Cal.App.2d 854, the Superior Court argues this case comes within the purported rule that an appeal should be dismissed "as moot where a union fails to appeal the denial of damages and simply seeks a determination that the employer breached the collective bargaining agreement." We disagree. *Keith Garrick, Inc.* dismissed as moot appeals from a judgment enjoining enforcement of invalid provisions of a collective bargaining agreement, because "the agreement involved in [the] cases had expired, and . . . a new and different agreement had

6

been executed." (213 Cal.App.2d at p. 435.) *Paoli* held the portion of a judgment awarding injunctive relief for breach of a collective bargaining contract "became moot after the expiration of the contract," and "the portion of the judgment declaring that defendant had breached the contract . . . became moot when the court found that plaintiffs were entitled to no damages and plaintiffs failed to appeal therefrom." (140 Cal.App.2d at pp. 856, 857-858, fn. omitted.) Here, the trial court did not issue an injunction based on expired contract provisions; and the Association appealed the denial of its requested writ relief, a remedy available to enforce public employment contracts. (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 343; *National City Police Officers' Assn. v. City of National City* (2001) 87 Cal.App.4th 1274, 1279.) We thus reject the Superior Court's argument the appeal is subject to dismissal as moot.

B.   *The Trial Court Properly Denied the Association's Writ Petition*

To determine whether the trial court properly denied the Association's petition for writ of mandate, we must interpret the layoff provisions of the Memorandum as amended by the Letter. The parties disagree on the standard of review we should apply and on how we should interpret the layoff provisions. We resolve each dispute in turn.

1.   *The Proper Standard of Review Is De Novo*

The Association argues we should interpret the layoff provisions de novo because the provisions are clear and unambiguous, and the trial court should not have considered any extrinsic evidence. The Superior Court argues that where, as here, conflicting extrinsic evidence was properly admitted, we must uphold the trial court's interpretation

7

if it is reasonable and supported by substantial evidence.  We conclude the de novo standard of review applies.

"Interpretation of a written instrument becomes solely a judicial function only when it is based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or when a determination was made based on incompetent evidence." (*City of Hope Nat. Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 (*City of Hope*).)  Here, the parties submitted declarations from participants in the meetings and negotiations that ultimately produced the layoff provisions of the Memorandum and the Letter, and some of the declarations attached notes the participants took at the meetings. The trial court properly sustained objections to the participants' conflicting statements about the intent of the layoff provisions or participants' understandings of those provisions, because such statements are irrelevant to the proper interpretation of the provisions.  (*Brant v. California Dairies, Inc.* (1935) 4 Cal.2d 128, 133; *PV Little Italy, LLC v. MetroWork Condominium Assn.* (2012) 210 Cal.App.4th 132, 157.)  Further, although the parties draw different conclusions from what was said at the meetings and negotiations concerning the layoffs, they do not disagree on what events led up to the meetings and negotiations or what was actually said at them.  Hence, since there was no conflict in this extrinsic evidence, the interpretation of the layoff provisions "becomes solely a judicial function" (*City of Hope*, at p. 395), and "is subject to independent review on appeal" (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 390).

2.	*The Memorandum and Letter Require Layoffs by Seniority Within Affected Classifications*

The Association contends the layoff provisions of the Memorandum and the Letter forbade the Superior Court to lay off *any* employee within the Association's bargaining units who was hired before June 24, 2005, unless and until the Superior Court had laid off *all* employees within the Association's bargaining units who were hired after that date. The Superior Court counters that layoffs had to be done by seniority *within each affected classification*, with the employee in the classification having the lowest seniority rating being laid off first, provided, however, that no employee within the classification hired before June 24, 2005, could be laid off until all employees within the classification hired on or after that date had been laid off. We agree with the Superior Court.

We begin by stating the legal rules governing our interpretation of the layoff provisions. Our primary goal in interpreting a contract is to effectuate the mutual intention of the parties as it existed at the time the contract was made. (Civ. Code, § 1636; *State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 195.) We ascertain such intention solely from the words of a written contract, if possible. (Civ. Code, § 1639; *Continental Ins. Co.*, at p. 195.) Where, as here, two contracts relate to the same subject matter, we read them together; consider the various provisions in context, not in isolation; and strive to give effect to every provision. (Civ. Code, §§ 1641, 1642; *Lemm v. Stillwater Land & Cattle Co.* (1933) 217 Cal. 474, 480; *Legendary Investors Group No. 1, LLC v. Niemann* (2014) 224 Cal.App.4th 1407, 1413 (*Legendary Investors*).) Finally, we must adopt an interpretation that is reasonable, fair and makes

9

the contract effective, and avoid an interpretation that leads to absurd or unjust results or defeats the objective of the contract. (Civ. Code, §§ 1638, 1643; *Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 765; *Eucasia Schools Worldwide, Inc. v. DW August Co.* (2013) 218 Cal.App.4th 176, 182 (*Eucasia Schools*); *Chevron U.S.A., Inc. v. Bragg Crane & Rigging Co.* (1986) 180 Cal.App.3d 639, 644.) Applying these interpretive rules, we conclude the Memorandum and the Letter required the Superior Court to lay off employees by seniority within each affected job classification.

Article 13 of the Memorandum contains several provisions indicating layoffs must be done by seniority within an affected job classification. Article 13 authorizes the Superior Court's executive officer to reduce the work force for lack of funds, in which event he "shall identify *the program or function* that is subject to a reduction in work force" and "may establish a layoff list *by classification/position within a program or function of the Court*." (Italics added.) When the executive officer decides to reduce the work force, employees "shall be laid off *on the basis of a seniority rating of the employees in the class of layoff, lowest rating first*." (Italics added.) Article 13 also specifically provides any layoff of employees hired before June 24, 2005, will be based on seniority and "will occur separately *within each affected classification*." (Italics added.) When the executive officer determines "a layoff *in a specific class* is necessary, an employee *in that class* may volunteer to be laid off," or the executive officer may permit an employee within the affected class "to demote *to a lower class*" instead of being laid off. (Italics added.)

10

The Letter, which was expressly intended to "supplement, clarify and/or amend [a]rticle 13 of the [Memorandum]," also contains several provisions indicating layoffs must be done by seniority within each affected job classification. Section II of the Letter states: "Employees *in each separate classification identified for layoff* shall be laid off *on the basis of a court-wide seniority rating within that classification, lowest rating first*." (Italics added.) Section III corrects a typographical omission and restates the provision in article 13 of the Memorandum that "the order of layoff will be *based on use of the seniority list*" established under article 13. (Italics added, underlining omitted.) Section III also adds a new limitation: "Once all employees hired on or after June 24, 2005 are laid off, the layoff process contained herein shall apply to employees hired before June 24, 2005." Section IV clarifies that "employees *in positions identified for elimination*" may demote to a previously held position, "[p]rovided it does not result in the layoff of an employee with a higher seniority rating . . . ." (Italics added.) Finally, section VIII provided that in lieu of layoff, an independent calendar clerk who had previously been a courtroom clerk could laterally transfer to a courtroom clerk position currently held by an employee with a lower seniority rating.

These various layoff provisions, when read together as they must be (Civ. Code, §§ 1641, 1642; *Legendary Investors*, *supra*, 224 Cal.App.4th at p. 1413), required the Superior Court to designate particular job classifications for layoff and to lay off employees within each designated classification strictly by seniority. Specifically, the employee with the lowest seniority rating in a classification subject to work force reduction must be laid off first, followed by the employee with the next lowest seniority

11

rating in the classification, and so on until the desired reduction in work force was attained. The "bumping" provisions of the Letter further clarified that layoffs would proceed by seniority within affected job classifications, by authorizing employees in positions identified for elimination to demote or laterally transfer to positions in other classifications held by employees with less seniority.

There is, however, a limited exception to the requirement that layoffs within a classification had to proceed strictly on the basis of seniority. The Memorandum created the possibility an employee hired on or after June 24, 2005, could have a higher seniority rating than an employee hired earlier, because employees hired on or after June 24, 2005, were given credit for continuous service with the Superior Court, the Municipal Court, *and the County*, but earlier-hired employees were given credit for continuous service with the Superior Court and the Municipal Court *only*. (See fn. 1, *ante*.) To give additional protection from layoffs to employees hired before June 24, 2005, the last sentence of section III of the Letter provides: "Once all employees hired after June 24, 2005 are laid off, the layoff process contained herein shall apply to employees hired before June 24, 2005."

We thus interpret the layoff provisions of the Memorandum and the Letter to require layoffs by classification on the basis of seniority, with the proviso that no

employee within an affected classification hired before June 24, 2005, could be laid off unless and until all later-hired employees within the classification had been laid off.[3]

The Association argues this interpretation is incorrect by focusing on the last sentence of section III of the Letter: "Once all employees hired after June 24, 2005 are laid off, the layoff process contained herein shall apply to employees hired before June 24, 2005." According to the Association, this "clear and unambiguous" language establishes a "caveat" that, *regardless of job classification*, no employee hired before June 24, 2005, could be laid off until all later-hired employees had been laid off. We are not persuaded.

It is true, as the Association points out, the last sentence of section III of the Letter "does not refer to all employees within a classification, but instead, simply refers to all employees." It is also true that, *read in isolation*, the sentence supports the Association's interpretation. But "even if one provision of a contract is clear and explicit, it does not follow that that portion alone must govern its interpretation; *the whole of the contract must be taken together so as to give effect to every part*." (*Alperson v. Mirisch Co.* (1967) 250 Cal.App.2d 84, 90, italics added; accord, *Legendary Investors*, *supra*, 224 Cal.App.4th at p. 1413.) "The contract must be construed as a whole, without giving a distorting emphasis to isolated words or phrases." (*Transamerica Ins. Co. v. Sayble*

---

3    Interpreting the last sentence of section III of the Letter as qualifying the strict seniority standard for layoffs that would otherwise apply gives the sentence independent force and effect. We therefore reject the Association's complaint that this interpretation fails to give effect to every part of the contract and renders the sentence " 'nugatory, inoperative, . . . meaningless,' " and " 'redundant.' "

(1987) 193 Cal.App.3d 1562, 1566.)  As explained above, the layoff provisions of the Memorandum and the Letter, considered as a whole, required the Superior Court to lay off employees on the basis of seniority *within each affected job classification*.  We therefore reject the Association's interpretation of the layoff provisions as forbidding the Superior Court to lay off any employee hired before June 24, 2005, until it had laid off all earlier-hired employees, regardless of classification.

We also reject the Association's interpretation because it would unreasonably restrict the Superior Court's contractual right to reduce its work force.  The Memorandum and the Letter authorized the Superior Court's executive director to respond to the budget reductions announced in 2012 by identifying programs or functions subject to work force reduction and establishing a layoff list by classification/position within the identified programs or functions.  The Superior Court thus could reduce its work force by eliminating entire job classifications, reducing the number of positions in classifications, or a combination of these methods.  Under the Association's interpretation of the Letter, however, unless and until all employees in every job classification hired on or after June 24, 2005, had been laid off, no classification could be eliminated if it contained an earlier-hired employee, and no classification could have its positions reduced to a target number if it contained a greater number of earlier-hired employees.  As the learned trial court noted, the Association's interpretation

> "would render the classification system a nullity and could require
> reorganization and reassignment of employees into classifications very
> different from their current assignments without regard to qualification.
> The resulting reassignments would be based on date of hire irrespective of
> training, background, or experience.  It would result in management by

14

chaos at a time when the court's ability to serve the public was being tested."

An interpretation that leads to such unjust and absurd results must be rejected, especially when the alternative interpretation we adopted above avoids these problems. (Civ. Code, § 1643; *Eucasia Schools*, *supra*, 218 Cal.App.4th at p. 182; *Segal v. Silberstein* (2007) 156 Cal.App.4th 627, 633.)

Finally, we note the extrinsic evidence admitted by the trial court does not support the Association's position. Although the Association argues on appeal that the trial court erred by considering any extrinsic evidence, the Association submitted to the trial court several declarations that attached notes from one of the meetings leading up to the Letter, and argued this "parol[] evidence" supported its interpretation. According to the notes, the Superior Court's human resources director stated that employees hired on or after June 24, 2005, would be laid off before employees hired earlier. Significantly, the cited notes are silent on the issue of whether layoffs would proceed by seniority within an affected job classification. The human resources director, however, submitted a declaration stating that her "comments were directed at layoffs *within classifications*," and notes taken at an earlier meeting by one of the Association's board members support her statement. Thus, the notes cited by the Association do not establish the parties' intent to lay off all employees hired on or after June 24, 2005, before laying off any earlier-hired employees, without regard to job classification.

But even if the notes did establish such an intent, we would still reject the Association's interpretation of the Letter. "[E]xtrinsic evidence is not admissible to

15

ascribe a meaning to an agreement to which it is not reasonably susceptible." (*ASP Properties Group v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1267.) The various layoff provisions of the Memorandum and the Letter plainly required layoffs by seniority within affected classifications. They cannot reasonably be interpreted to require that, regardless of classification, all employees hired on or after June 24, 2005, had to be laid off before any earlier-hired employee could be laid off, as the Association urges.

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

IRION, J.

WE CONCUR:

McDONALD, Acting P. J.

O'ROURKE, J.

16